WILLIAM UNDERWOOD *vs.* ANDREW CARNEY & another.
SAME *vs.* THOMAS WIGGLESWORTH.

Where the grantor of land conveyed to the grantee "the right of passing and repassing, draining, and all the usual easements," in and upon other land of the grantor, the easements thus created became appurtenant to the estate conveyed, and susceptible of conveyance to subsequent purchasers, as appurtenances, without express words.

A right of way, appurtenant to land, is appurtenant to the whole and to every part of it; and, if such land be divided, and conveyed in separate parcels, a right of way thereby passes to each of the grantees.

J. C., being the owner of land on the easterly side of Morton Place, a court or passage way in the city of Boston, and also of the fee of Morton Place, conveyed a portion of the land to the plaintiff, "with the privilege of using said court or passage way, which, with the sidewalk, is about thirty feet in width, for the purpose of a passage way, in common with all other persons, whose estates are bounded thereby or communicate therewith:" J. C. subsequently conveyed the fee of Morton Place to R. and A., who were the owners of land on the westerly side thereof: R. and A. conveyed portions of the land to the defendants, "with the right of passing and repassing, draining, and all the usual easements on said

Morton Place, not inconsistent with those of the easterly abutters: " The defend-ants subsequently erected on their own land, but on the line of Morton Place, warehouses with doors and windows opening upon Morton Place, and shutters projecting into the same, when open, and with sidewalks therein, having on their surface iron gratings for the admission of light to, and trap doors for communi-cating with, the underground apartments of the warehouses : In actions on the case, for obstructing the plaintiff's right of way by such erections, it was held, that the parties must be presumed to be acquainted with the usages of the place, and to have created the easement with reference thereto; that the de-fendants had a right to make a reasonable use of the way in Morton Place adjoin-ing their land; that the use, which other persons, similarly situated, made of their land, was evidence of what was such reasonable use; and that, in erect-ing the structures complained of, it did not appear, that the defendants had made any use of Morton Place, or had done any acts on their lands adjoining thereto, which were not justified by a common and well established usage in the city of Boston.

These were actions on the case, for an alleged obstruction, by the defendants, of the plaintiff's enjoyment of a right of way in a passage or court called Morton Place, which the plaintiff claimed as appurtenant to his dwelling-house.

The declaration, in each case, set forth the unlawful erec-tion of warehouses, the windows, shutters, and doors of which opened upon and swung over, and the eaves of which pro-jected into, the passage or court known as Morton Place; that the defendants had excavated parts of the same, and had placed upon and around such excavations large quanti-ties of iron and stone; that they had placed upon other parts of the passage large quantities of earth, bricks and stones, and had erected a sidewalk thereon; and that they had raised and elevated parts of the passage, so that the same was obstructed, and the flow of the water from the surface thereof impeded, and directed into and upon the plaintiff's foundation and cellar.

The cases were tried in this court before *Wilde,* J., from whose report thereof, accompanied by plans and deeds exhib-ited by the parties, the following facts appeared.

The plaintiff's dwelling-house was on the easterly, and the erections and obstructions complained of on the westerly, side of Morton Place.

The defendants had erected warehouses on lands belong-ing to them, on the westerly side of Morton Place, with a sidewalk in front containing trap doors. and gratings. for

communicating with and admitting light to apartments under ground, and with doors and shutters, projecting, when opened, over the line of the passage way.

Several witnesses, called by the plaintiff, who were occupiers of houses on the easterly side of Morton Place, testified, that, in their judgment, the narrowing of the court, by the erection of the sidewalk; — the leaving of the iron shutters partly open, which frequently occurred; — the keeping open of the trap door, in the sidewalk of one of the defendants, which was the case from a third to a half of each day, for the purpose of putting in and taking out goods; — the peril in the night time from a break in the sidewalk owing to an increase of its width opposite the building of one of the defendants; — and the unpleasantness, to females and others, of that part of the sidewalk, which consisted of iron gratings for the admission of light; — were an injury to the plaintiff's estate.

The plaintiff derived the title of his estate, to which he claimed the right of way in question as appurtenant, from Jonathan Cogswell, under a deed bearing date July 24th, 1835; at which time, Cogswell was the owner of the estate which he then conveyed to the plaintiff, and was also seized in fee of the court or passage known as Morton Place.

The deed of Cogswell to the plaintiff described the house and land thereby conveyed as being numbered five on a plan of Morton Place, and granted and conveyed to the plaintiff an easement in Morton Place, in the following terms: "the privilege of using said court or passage way, called Morton Place, which, with the sidewalk, is about thirty feet in width, for the purpose of a passage way, in common with all other persons, whose estates are bounded thereby, or communicate therewith, so, however, as not to hinder or prevent me the said Cogswell, or my heirs or assigns, from erecting and maintaining a fence or wall on the westerly side of said passage way, in case I or they choose to do so, at any time, if, by the erection of such fence or wall, the width of said court shall not be reduced more than eighteen inches, which

reservation is made to enable me, my heirs and assigns, to hinder and debar the owners, tenants and occupants of the land adjoining said court, on the westerly side thereof, from using said court, or having any communication therewith, except by my or their permission and consent."

The estates of the defendants are situated on the westerly side of Morton Place, and are parts of what was known as the Bowdoin estate, the defendant Wigglesworth being the owner of one lot, and the other defendants of three lots.

At the date of the deed of Cogswell to the plaintiff, Cogswell was seized in fee of Morton Place; and his estate therein, subject to the easements created by his deed to the plaintiff, subsequently passed by mesne conveyances, and, in April, 1836, vested in Russell and Amory; who were also at the same time the owners of the Bowdoin estate, including the land, of which the defendants subsequently became the purchasers. In October, 1836, Russell and Amory conveyed the Bowdoin estate to Henry Rice, in fee, by a deed which contained the following clause: "And also conveying to said Rice, his heirs and assigns, the right of passing and repassing, draining, and all the usual easements on said Morton Place, not inconsistent with those of the easterly abutters." In June, 1841, Rice conveyed the estate, with the exception of a part previously conveyed to John Davenport, to Thomas Searle. The deed to Searle conveyed the right of passing, repassing, &c., in Morton Place, in the terms of the deed from Russell and Amory to Rice. The estate of Searle, which consisted of an equity of redemption, was sold on execution, in March, 1843, by Watson Freeman, a deputy sheriff, to George Wildes, including "the right of passing, repassing and draining, and all the usual easements on said Morton Place, not inconsistent with those enjoyed by the easterly abutters." The estate, or a portion thereof, was conveyed by Wildes, December 29th, 1843, to Griffin, who subsequently conveyed portions or lots thereof to the several defendants; but in none of these last mentioned conveyances was there any grant or mention of a right of way in Morton Place.

The judge, before whom the trial took place, being of opinion, that the defendants had a right, under their deeds, to erect the structures complained of, in the manner already described, verdicts were thereupon entered, by consent, for the defendants, subject to the opinion of the whole court. If, in the opinion of the court, the defendants had the right in question, judgments are to be rendered on the verdicts; otherwise new trials are to be ordered.

*S. Bartlett*, for the plaintiff.

*C. G. & C. W. Loring*, for the defendants.

Forbes, J. These cases depend substantially upon the same state of facts, upon which two questions arise: first, whether the defendants have a right of passage or way in Morton Place; and, second, if they are entitled to such an easement, whether they have been guilty of such changes, alterations, or abuses of the right, as will enable the plaintiff to maintain actions against them.

1. The first question is, whether the defendants are the owners of a right of way in Morton Place. The estate of the plaintiff is situated on the easterly side of Morton Place, and he derives his title from Jonathan Cogswell, under a deed bearing date July 24th, 1835, some of the provisions of which require a particular consideration. The estates of the defendants are situated on the westerly side of Morton Place, and are parts of what is known as the Bowdoin estate.

[Here the judge recapitulated the conveyances as already stated on pages 287 and 288.]

Russell and Amory, thus being the owners of the fee in Morton Place, had the power of appropriating it to such uses, and of subjecting it to such easements and servitudes, as they saw fit, not inconsistent with the rights of the plaintiff. Being also the owners of the adjoining land, denominated the Bowdoin estate, it was equally in their power to annex the easements, which they might thus create, to the Bowdoin estate, and to convey the same therewith.

In the opinion of the court, the effect of the conveyances, above enumerated, of the Bowdoin estate, from Russell and

Amory and their grantees, was to annex the easements in Morton Place to the estates thereby conveyed; and that such easements passed as appurtenances to subsequent purchasers, among whom were the defendants, although the easements were not expressly mentioned in their deeds. *Kent* v. *Waite,* 10 Pick. 138.

But it was contended, that, in case these easements should be held to be appurtenant to the whole estate, yet, that they were lost by a division of the estate, on the ground, that the easements were indivisible, and could not attach to the several parts carved out of the estate.

It appears to us, that the law is otherwise; and that a right of way appurtenant to land is appurtenant to all and every part of the land, and that upon a division of land, to which a right of way is attached, a right of way will exist in the owner of each of the parts, into which it is divided. *Watson* v. *Bioren,* 1 Serg. & R. 229.

Besides, we think it pretty evident, from the terms of the deed of Cogswell to the plaintiff, that the parties contemplated the probability of a division of the Bowdoin estate. The grantor reserves to himself, his heirs and assigns, the right of erecting, *at any time,* and of maintaining a fence or wall on the westerly side of Morton Place. The object undoubtedly was, to compel the owners, tenants, or occupants of the estate, future as well as present, to purchase a right of way in Morton Place. The deed declares: " which reservation is made to enable me, my heirs and assigns, to hinder and debar the owners, tenants and occupants adjoining said court, on the westerly side thereof, from using said court, or having any communication therewith, except by my or their permission and consent." To limit this right to those who then were the owners, tenants and occupants of the Bowdoin estate would be a narrow construction of the deeds; for, upon such construction, if there were occupants or tenants who were not owners, the reserved power would be inapplicable. We take the true construction to be, that the grantor reserved to himself, his heirs and assigns, the right of excluding from

Morton Place every person who then was, or should afterwards become, an owner, occupant, or a tenant, of the whole, or of any part, of the Bowdoin estate. If this view be correct, a division of that estate was anticipated by the parties to the deed, and the grantor reserved the right to sell the right of passage in Morton Place, to any person who then was, or should afterwards become, either the owner, the tenant, or the occupant, of any part of that estate.

The grant to the plaintiff is not of an exclusive easement, or of an easement in common with the owners of estates on the east side of Morton Place; but of an easement in common with all persons whose estates are bounded on that place or communicate therewith, including, of course, the owners, tenants and occupants of the Bowdoin estate. The court are clearly of opinion, that the defendants are entitled to the easement in Morton Place, for which they contend.

2. The remaining question is, whether the defendants have exercised their rights in a reasonable and lawful manner, or whether they have been guilty of acts contravening the rights of the plaintiff, and for which he is entitled to a remedy at law.

This must depend upon the construction of the grant from Cogswell to the plaintiff. The grant is of "the privilege of using said court or passage way called Morton Place, which, with the sidewalk, is about thirty feet in width, for the purpose of a passage way, in common with all other persons whose estates are bounded thereby or communicate therewith." This grant is followed by the reservation, which has been already the subject of comment.

By virtue of this grant, which was prior to the grant from Cogswell, under which the defendants claim, it is contended, that the defendants are precluded from making any alterations in Morton Place, which produce any inconvenience to the plaintiff; while it is conceded, that, with this limitation, the defendants may use the passage way in any manner, which may be most convenient to themselves. As a general proposition, we think it to be true, that the owner of land, adjoin-

ing a passage way, has no right to use the way, in a manner which produces any serious inconvenience to the owner of the easement. But general propositions are liable to be much modified by circumstances : *in generalibus versatur error.*

If the grantor of this easement had reserved to himself, in express terms, and had granted to the defendants, the right to make the alterations and improvements of which the plaintiff now complains, these actions, of course, could not be maintained. But the plaintiff is as much bound by all necessary implications, springing from or arising out of the grant, by a just construction of it, as by the express provisions of the instrument. The title of the plaintiff is, comparatively, of recent origin. A right of way is created over valuable land, in the midst of a populous city. The parties to the grant must be presumed to have been well acquainted with the usages of the place, and to have created this easement with a reference to those usages. It is not in the least degree probable, that the parties intended to make this particular spot an exception to the usual course of affairs, or that they designed to interdict the common and ordinary uses and improvements incident to such a locality.

The defendants have a right to make a reasonable use of the way adjoining to their land ; and public usage, — the use, which others, similarly situated, make of their land, — is evidence of a reasonable use. Such was the doctrine of this court, in the case of *O'Linda* v. *Lothrop,* 21 Pick. 292, and the principle of that case is sustained by the spirit of earlier decisions. *Senhouse* v. *Christian,* 1 T. R. 560 ; *Gerard* v. *Cook,* 2 Bos. & Pul. 109.

We consider this to be a just and equitable rule of construction, which, while it imposes no unnecessary restraints upon the defendants, affords all reasonable protection to the rights and interests of the plaintiff ; and we think it decisive, in the present actions ; for we are not satisfied, that the defendants have made any use of the passage way, or that they have done any acts on their lands adjoining thereto, which are not justified by a common and well established usage in the place.

It is understood, that the principal matter in controversy be-tween the parties was as to the rule of law, by which these actions ought to be governed. Plans of the premises have been exhibited, and the evidence taken at the trial has been submitted to the court, under an agreement, that if, in their opinion, the defendants had a right, by their deeds, to erect and maintain the structures complained of, judgment should be entered for the defendants. The opinion of the court being in favor of the defendants, judgment must be entered accordingly.